# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| QUENTINCE JACKSON ]<br>o/b/o Z.J., ]<br> ]<br>    Plaintiff, ]<br> ]<br>v. ]<br> ]<br>COMMISSIONER, SOCIAL ]<br>SECURITY ADMINISTRATION, ]<br> ]<br>    Defendant. ] | Case No.: 4:17-cv-00733-ACA |

## **MEMORANDUM OPINION**

Plaintiff Quentince Jackson brings this action on behalf of her minor child, Z.J. ("Claimant"), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI"). (Doc. 1). Ms. Jackson argues that the Administrative Law Judge ("ALJ") erred by: (1) failing to find that Claimant qualifies for listings 112.10 ("Autistic Disorder") and 112.12 ("Attention Deficit Disorder"); (2) failing to find that Claimant meets the functional equivalence of these listings; (3) failing to accord proper weight to the report and opinion of consulting psychologist Dr. Sizelove; (4) failing to properly evaluate all of Claimant's medically severe impairments in rendering its decision; and (5) failing to support its denial of benefits with substantial evidence. (Doc. 10). Because the

ALJ did not state with particularity the weight it gave to Dr. Sizelove's Psychological Evaluation Report or the reasons why it may have discredited his opinion, the court **WILL REVERSE** and **REMAND** the Commissioner's decision for further proceedings.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Z.J. was seven years old at the time of the administrative hearing and in the process of repeating the first grade. (R. at 15). Ms. Jackson claims that her daughter became disabled due to: "Autism Spectrum Disorder, Oppositional Defiant Disorder, Persistent Depressive Disorder, Attention Deficit Hyperactivity Disorder, Accommodative Esotropia, strabismus (crossed eyes), and severe headaches." (R. at 152).

Ms. Jackson filed a Title XVI application for SSI on behalf of Z.J. (R. at 165–68). The Social Security Administration initially denied these claims. (R. at 104–07). Ms. Jackson then filed a written request for a hearing (r. at 152–64), which was granted. (*See* R. at 56). Thereafter, the ALJ issued an opinion concluding Z.J. was not disabled as defined under the Social Security Act and denied the application for SSI. (R. at 39–50).

Ms. Jackson, through her attorney, filed a timely request for review of the ALJ's decision. (R. at 6–8). However, the Appeals Council found no basis for changing the ALJ's decision and denied Ms. Jackson's request. (R. at 1–3). As a

result, the decision of the Appeals Council became the final decision of the Commissioner for purposes of appeal.

After exhausting her administrative remedies, Ms. Jackson filed a complaint with this court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the ALJ's decision. (Doc. 1). The Commissioner answered on February 26, 2018. (Doc. 8). Ms. Jackson filed a brief in support of disability (doc. 10), and the Commissioner responded with a brief in support of affirmance (doc. 11).

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a Social Security claimant may obtain judicial review of the Commissioner's final decision after exhausting all available administrative remedies. On appeal, the court's role is to determine whether the Commissioner's decision is based on substantial evidence and the application of correct legal standards. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Commissioner's legal conclusions are reviewed *de novo* and "no presumption of validity attaches to the Secretary's determination of the proper legal standards to be applied in evaluating claims." *Shalala*, 985 F.2d at 531. "If the court finds an error in the ALJ's application of the law or that it fails to provide sufficient reasoning to support its legal analysis, the ALJ's decision must be

reversed." *Ware v. Colvin*, 997 F. Supp. 2d 1212, 1216 (N.D. Ala. 2014) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991)).

### III. LEGAL FRAMEWORK

The Social Security Administration ("SSA") applies a three-step sequential evaluation when deciding whether a child is eligible for SSI benefits. This evaluation involves determining: (1) whether the child is engaged in "substantial gainful activity;" (2) whether the child suffers from a "medically determinable impairment(s) that is severe;" and (3) whether the child has an impairment or combination of impairments that "causes marked and severe functional limitations [that] meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals the listings." 20 C.F.R. § 416.924. If a claimant does not meet the threshold requirements of any step, the ALJ will deny disability benefits.

A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 416.908. Moreover, such impairments "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id.*

To establish that an impairment functionally equals a listing, the child's impairment or combination of impairments must result "in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* § 416.926a(a). A "marked" limitation is defined as an impairment that "seriously interferes" with a child's "ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). The SSA describes an "extreme" limitation as "more than marked" but "does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.926a(e)(3)(i). The domains used by the SSA to determine whether a child's impairment(s) functionally equal a listed impairment are: (1) "acquiring and using information;" (2) "attending and completing tasks;" (3) "interacting and relating with others;" (4) "moving about and manipulating objects;" (5) "caring for yourself;" and (6) "health and physical well-being." *Id.* § 416.924a(b)(1)(i)-(vi).

## IV. FINDINGS OF THE ALJ

At Step One of the instant case, the ALJ found that Z.J. had not engaged in substantial gainful activity since October 4, 2013, the application date, and qualified as a school-age child under § 416.92a(g)(2). (R. at 15). At Step Two, the ALJ found that Z.J. had the following severe impairments: "attention deficit hyperactivity disorder (ADHD); combined type autism spectrum disorder, with

5

intellectual impairment; persistent depressive disorder; and overanxious disorder of childhood." (*Id.*).

Turning to Step Three, the ALJ found that Z.J. did not have an impairment or combination of impairments that met or *medically* equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15–16). In making this finding, the ALJ considered listings: 112.01 ("Category of Impairments, Mental Disorders"); 112.04 ("Depressive, bipolar and related disorders"); 112.05 ("Intellectual disorder"); 112.06 ("Anxiety and obsessive-compulsive disorders"); 112.10 ("Autism spectrum disorder"); and 112.11 ("Neurodevelopmental disorders"). (R. at 15). The ALJ also determined that Z.J. did not have an impairment or combination of impairments that *functionally* equaled the severity of one of the listed impairments. (*Id.*). Thus, the ALJ concluded that Z.J. was not "disabled" for purposes of eligibility for SSI under § 1614(a)(3)(C) of the Social Security Act. (R. at 26–27).

The ALJ's determination that Z.J. lacked an impairment or combination of impairments that functionally equaled the requisite severity was derived from the ALJ's finding that, although Z.J.'s impairments could produce the reported symptoms, statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. at 18). The ALJ gave partial weight to the opinion of the state agency non-examining physician, Robert Estock,

M.D., because the evidence established that his opinion was based primarily on Ms. Jackson's own testimony and he was not provided questionnaires prepared by Z.J.'s first grade teacher. (R. at 18–19). The ALJ determined that the two teacher questionnaires in the record were highly probative of Z.J.'s "true functioning" because Z.J.'s teachers, both of whom were financially disinterested professionals, had daily contact with her at the time the questionnaires were completed. (R. at 19). Lastly, the ALJ afforded little weight to the Medical Source Statement of licensed counselor Rosa Statom because her opinions were not those of a recognized medical source under Social Security Ruling 06-03p. (R. at 19). Notably, the ALJ did not state with particularity the weight given to the Psychological Evaluation Report of Dennis Sizelove, Ph.D, the psychologist who examined Z.J. (R. at 12–27).

## V. ANALYSIS

### A. Dr. Sizelove

Ms. Jackson argues that the ALJ erred in finding that Z.J. does not qualify for listings 112.10 ("Autistic disorder") and 112.12 ("Attention Deficit Disorder") or, alternatively, meet the functional equivalence of these listings. Ms. Jackson's argument relies primarily on the report of consulting psychologist Dr. Sizelove, which she contends was not afforded proper weight by the ALJ in its decision denying SSI.

Z.J. saw Dr. Sizelove for a psychological evaluation in September 2018. (R. at 289). Dr. Sizelove administered the Kaufman Brief Intelligence Test, Second Edition (KBIT-2), the Behavioral Assessment System for Children, Second Edition (BASC-2), Parent Rating Scales-Preschool (PRS-P), and Behavior Rating Inventory of Executive Function (BRIEF). (R. at 289–30). Among other things, Dr. Sizelove reported a significant difference in Z.J.'s verbal and performance scores, which he found indicative of Z.J. having a greater ability to complete visuospatial tasks than those requiring verbal fluency. (R. at 295–96). Dr. Sizelove further determined that Z.J.'s scores on the KBIT-2 reflected below average intellectual functioning when compared to others her age. (*Id.*). Dr. Sizelove concluded that Z.J.'s results were consistent with the diagnostic criteria for both autism spectrum disorder with accompanying intellectual impairment as well as attention deficit/hyperactivity disorder. (R. at 295).

Weighing the opinions and findings of treating, examining, and non-examining physicians is essential in determining whether a claimant is disabled. *Rosario v. Commr. of Soc. Sec.*, 490 Fed. Appx. 192, 194 (11th Cir. 2012). It is clear that the ALJ considered portions of Dr. Sizelove's evaluation when determining that Z.J. suffered from several severe impairments at Step Two, citing the report in support. However, the ALJ's decision conflicts with the report as to the severity and intensity of Z.J.'s impairments and fails to clearly articulate either

8

the weight given to Dr. Sizelove's Report or the reasons why it may have discounted his opinion.[1] In *Winschel v. Commissioner of SSA*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, the ALJ must state with particularity the weight given to opinions and the reasons therefor. *Id.* at 1178–79. In the absence of clearly articulated grounds for which portions of the evaluation were discounted or rejected, the court cannot determine whether the ALJ's conclusions were supported by substantial evidence. *Winschel*, 631 F.3d at 1178–79 (finding that an ALJ may not "implicitly discount" or ignore any medical opinion). Accordingly, because the ALJ neither explained the weight that it gave to Dr. Sizelove's report nor why it may have discredited his opinion the court **WILL REVERSE** and **REMAND** this matter with instruction that the ALJ make these determinations.

### B. The ALJ's Evaluation of Z.J.'s Impairments

Additionally, Ms. Jackson argues that the ALJ erred in failing to consider all of Z.J.'s impairments in rendering its decision denying SSI. After reviewing the record, the court finds that this contention is without merit. When an ALJ recognizes at least one severe impairment and proceeds to Step Three of the

---

[1] The court notes that Dr. Sizelove's opinion appears to be based in large measure, on the functional limitations opinion of Z.J.'s mother only. Dr. Sizelove's report references Z.J.'s "rater" in the singular and predates the Teacher Questionnaires. (*See* R. at 208–17, 225–31).

sequential evaluation process, it is not required to identify additional impairments if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 Fed. Appx. 949, 951 (11th Cir. 2014). Indeed, the Eleventh Circuit recognizes that an ALJ's comprehensive statement that it "has considered all of Claimant's impairments" is sufficient. *Id.* Here, the ALJ stated at Step Three, that it "assessed the interactive and cumulative effects of all of the Claimant's medically determinable impairment(s), including any impairments that are not 'severe.'" (Doc. 8-3 at 16–17). Therefore, the ALJ did not err by failing to consider all of Z.J.'s impairments and symptoms.

## VI. CONCLUSION

Based on the evidence in the record and the parties' submissions, the court concludes that the ALJ committed reversible error in failing to state with particularity the weight it gave to Dr. Sizelove's Psychological Evaluation Report or the reasons why it may have discredited his opinion. Accordingly, the court **WILL REVERSE** and **REMAND** the Commissioner's decision by separate order.

**DONE** and **ORDERED** this December 4, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE